**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

STEVEN GUENTHER,

Plaintiff,

v.

CASE NO. 1:24-CV-285-HAB

FORT WAYNE DOUGH CO., LLC, et al.,

Defendants.

**OPINION AND ORDER**

Plaintiff Steven Guenther ("Guenther" or "Plaintiff") sued Defendants Fort Wayne Dough Co., LLC, Fort Wayne Dough Co. South, LLC, and Mishawaka Cookies, LLC (collectively "Crumbl Cookies" or "Defendants"). (ECF 1). He alleged violations of the Fair Labor Standards Act ("FLSA") and Indiana's overtime statute,[1] claiming Defendants knowingly had him work significant unpaid overtime and that when they paid him for overtime, they underpaid him. (*Id.*). Both parties moved for summary judgment—Guenther in part and Defendants in full—and the motions have each been fully briefed. (ECF 23, 26, 31, 33, 52 53).

The parties tell wildly different stories about whether Guenther worked unpaid overtime hours, and the Court finds both plausible based on the evidence before it, so the motions will be DENIED as to the issue of unpaid overtime. On the miscalculated overtime claim, Defendants' motion will be DENIED. Guenther's motion will be GRANTED IN PART because Defendants improperly failed to include Guenther's $3 per hour guaranteed tip wage when calculating his

---

[1] The statutory provisions of Indiana law are never cited nor addressed. In any event, the relevant claims under state law are identical to those under federal law. *See* Ind. Code §§ 22-2-5-1, 22-2-5-1.1, 22-2-5-2.

overtime pay, but DENIED IN PART because a jury must find this violation was willful for part of his claim to fall within the statute of limitations.

## FACTUAL BACKGROUND

Defendants are franchisees of the popular retail bakery chain Crumbl Cookies. (ECF 25, ¶ 5). Crumbl Cookies launched three new stores in northern Indiana starting in early 2022, two in Fort Wayne and one in Mishawaka. (*Id.*, ¶¶ 2–13). Those stores were owned by Erin Peterson ("Erin"), Laken Carson ("Laken"), and Mark Peterson ("Mark").[2] (*Id.*, ¶ 6).

They hired Alisa Smith ("Alisa")[3] to run the stores. (*Id.*, ¶12; ECF 27-1, ¶ 10). Alisa began working for Crumbl Cookies in the summer of 2020 as a shift lead at a store in Utah. (ECF 25, ¶12). She eventually became a part of the company's field training team for more than a year, helping to open dozens of stores across the country before moving to Indiana to become a store operator. (*Id.*). Alisa married Guenther mere months before starting this role and hired him as an employee to help with the new stores.[4] (ECF 27-1, ¶ 4).

### I.    Launching the Stores

The Mishawaka store was the first to open in the summer of 2022. (ECF 27-1, ¶ 29). The Fort Wayne stores, with locations at Orchard Crossing and on Coliseum Boulevard, opened later in 2023. (*Id.* ¶1). Alisa managed the day-to-day operations for each store. (*Id.* ¶ 24).

Setting up the Mishawaka store involved considerable work. (*Id.* ¶ 30). This led to Guenther working significant hours in the first couple of weeks he was on payroll. (*Id.* ¶ 34). These

---

[2] The Court uses first names for these individuals because all share last names with others referenced in this opinion.

[3] The parties' briefs and exhibits call Alisa both "Alisa Smith" and "Alisa Guenther." She submitted an affidavit and signed it as "Alisa Smith," but the Court will use her first name for the sake of clarity. (ECF 30-9).

[4] The parties dispute the timing and rigor behind Guenther's hiring and onboarding, but the Court finds these facts immaterial to the legal issues before it for summary judgment purposes.

hours came to the attention of Laken, who owned the Mishawaka store. (*Id.*). A conversation followed with Guenther, Laken, and her father Lance Carson ("Lance"), but the parties dispute what was said. Guenther claims that Laken instructed him to never record more than forty hours per week, no matter how much he worked.[5] (*Id.* ¶ 35). Defendants insist Laken simply instructed Guenther to not work more than forty hours per week. (ECF 25, ¶ 57). Guenther asserts that Laken then told him he was welcome to keep working, but that he would have to volunteer his time. (ECF 27-1, ¶ 38). He says Lance added that he was volunteering his time. (*Id.* ¶ 39). After this conversation, Guenther left the store. (*Id.* ¶ 40). He claims he returned to work the same day after getting something to eat, but Defendants dispute that. (*Id.*; ECF 32, ¶ 40).

## II.    <u>Guenther's Evidence of Hours and Responsibilities</u>

Guenther started off as a baker at the Mishawaka store and was later promoted to shift lead. (ECF 25, ¶ 18). At first, he earned $10 per hour in base pay and an additional $3 per hour in guaranteed tips. (*Id.*). When he moved to the Orchard Crossing store, his base pay increased to $11 per hour. (*Id.*). It later increased to $12 per hour. (*Id.*). Guenther worked for Crumbl Cookies until his separation from the company in June 2023. (*Id.* ¶ 16).

### A. <u>Guenther's Testimony</u>

Throughout his time with Crumbl Cookies, Guenther asserts he worked more than forty hours per week because the demands of the business required it. (ECF 27-1, ¶ 44). He claims that he was consistently sent on special assignments outside the store, which Defendants dispute. (*Id.* ¶ 45). He also frequently performed other tasks by filling in on other shifts that needed to be staffed at the stores. (*Id.* ¶ 46, 69). Guenther had to fill in often because most other employees only worked

---

[5] Crumbl Cookies argues that this assertion conflicts with Guenther's deposition testimony. (ECF 32, ¶ 35). Guenther did not explicitly claim that Laken said this in his deposition. (ECF 73:1–74:16). But his testimony allows for the inference that Laken said something like it, or that he could have perceived what Laken said to mean it. (*Id.*).

3

part-time. (ECF 25, ¶¶ 21–22). He also stepped up for night shifts because many employees were teenagers that legally could not work certain hours. (ECF 27-1, ¶ 65).

Guenther was responsible for entering his own time when he worked. He was trained on how to do this. (ECF 25, ¶ 29–30). But Alisa, his wife and supervisor, often did it for him instead. (*Id.* ¶ 33). Guenther says this often happened because he worked irregular hours and the timekeeping system would only let him clock in and out when he was already scheduled to work. (ECF 27-1, ¶ 86).

## B. Guenther's Estimate of Hours

To support his claims, Guenther created a spreadsheet estimating how many hours he truly worked for Crumbl Cookies and how much he should have been paid as a result. (ECF 30-6, at 8–9). In the spreadsheet, Guenther claims he worked the following amounts of overtime in the weekly periods that were paid out on the days referenced:

- July 8 and 15, 2022: 60 Overtime Hours Per Week

- Between July 22, 2022, and December 7, 2022: 40 Overtime Hours Per Week

- December 14, 21, and 24, 2022:[6] 60 Overtime Hours Per Week

- Between December 31, 2022, and April 23, 2023: 37.5 Overtime Hours Per Week

- Between April 30, 2023, and June 16, 2023: 18.75 Overtime Hours Per Week

(*Id.*).

Added up, Guenther estimates he worked 1,965 hours of overtime in the roughly one year he worked for Crumbl Cookies. (*Id.*). That would mean Guenther worked, on average, roughly 77.8 hours per week. (*Id.*).

---

[6] The Court takes notice of the paycheck timing inconsistency created by the three-day gap between December 21 and 24. Guenther thus claims to have worked 100 hours in 2 pay periods that ended 3 days apart.

4

### C. Employee Affidavits

Beyond his estimate, Guenther has also submitted sixteen affidavits. Two are from Alisa, who also gave deposition testimony. (ECF 30-8, 30-9, 34). Fourteen come from his Crumbl Cookies co-workers at both the Mishawaka and Orchard Crossing stores.[7] Four of them worked full-time or close to it. (ECF 30-11, 30-18, 30-21, 30-22). Another five, though part-time, worked up to thirty hours per week. (ECF 30-12, 30-13, 30-14, 30-15, 30-16).

The affidavits share common themes. Many employees attest that Guenther was always or almost always there when they were, or that he worked all the time.[8] Many say he was consistently there to open the stores at or before 5 a.m. (ECF 30-11, 30-13, 30-14, 30-15, 30-19). Some claim they believe Guenther regularly worked from 5 a.m. to 2 a.m. with very few breaks. (ECF 30-14, 30-15). They also attest that he often ran errands to pick up ingredients for the store, sometimes traveling all the way to Grand Rapids, MI. (ECF 30-11, 30-12, 30-13, 30-16, 30-19, 30-20, 30-21).

### D. Other Exhibits

Guenther also includes text message exchanges between Erin and Alisa. (ECF 27-1, ¶ 82). Read favorably to Guenther, the text messages show Erin would have had some general awareness that Guenther worked hard, even if the messages cannot always be tied to specific dates and times. (*Id.*). One text shows Erin acknowledging that she "know[s] [Guenther] is doing a lot!" (ECF 30-24, at 1). Another shows her acknowledging that "[Alisa] and Steven are burnt out." (*Id.* at 2). In another, Erin recognizes that Guenther had come in to conduct a lot of employee interviews even though he had worked late the night before. (*Id.* at 3). And in yet another, she describes Guenther

---

[7] ECF 30-10, 30-11, 30-12, 30-13, 30-14, 30-15, 30-16, 30-17, 30-18, 30-19, 30-20, 30-21, 30-22, 30-23.

[8] ECF 30-11, 30-12, 30-13, 30-14, 30-15, 30-16, 30-18, 30-19, 30-20, 30-22, 30-23.

as being indispensable. (*Id.* at 16 ("It's impossible for [Alisa and Steve] to step away.")). She also requested that Guenther split time between the Mishawaka and Orchard Crossing stores while the latter was getting off the ground. (*Id.* at 5). Other texts sent by Alisa would have made Erin aware that Guenther was working early mornings and at least sometimes staying late. (*Id.* at 4, 7, 8).

### III.   Defendants' Evidence

Defendants rely heavily on the time records and payroll records that logged Guenther's hours throughout his employment. The time records show that Guenther was usually logged as having worked somewhere around forty hours per week. (ECF 38, 39). The time logs match up with the corresponding payroll records. (ECF 40, 47).

At the Mishawaka store, Guenther was logged as working 86.77 hours of overtime between June and December of 2022. (ECF 38). The overtime was paid out at a rate of $15 per hour. (ECF 47). 51.367 hours of overtime pay was included his first paycheck on July 8, 2022. (*Id.* at 16). His next paycheck on July 15, 2022, included 18.833 hours. (*Id.*). Guenther earned some overtime pay 8 more times over the next few months, ranging from 0.32 hours to 4.25 hours per paycheck. (*Id.* at 4–15). All the overtime Guenther logged got paid out, aside from 0.17 hours from his November 4, 2022, paycheck that should have been paid out as overtime but was not.[9] (*Id.* at 8; ECF 38, at 106; ECF 25, ¶ 41 n. 2). The time records show that Alisa was usually the one who entered his time, often many days after the fact. (ECF 38). Guenther moved mostly to the Fort Wayne stores starting in January 2023. (ECF 39, 40). He was never logged as having worked overtime once this move occurred. (*Id.*).

---

[9] It is unclear from Crumbl Cookies' representations whether this has been paid out. No one disputes that Guenther is entitled to this previously unpaid overtime. For reasons explained below, the difference owed to Guenther would be $1.62.

Defendants also submitted affidavits from Erin and Laken. (ECF 35, 43). Erin denies awareness of Guenther working any hours beyond what he and Alisa logged in the system. (ECF 35, ¶ 8). She denies ever asking Guenther to work more than forty hours per week. (*Id.* ¶¶ 9, 13). She states that Guenther often had time to go to the gym, and that he and his wife Alisa went on multiple trips while he worked there. (*Id.* ¶ 6). Erin claims that many of Guenther's early morning shifts occurred because he liked not having to interact with customers. (*Id.* ¶ 14). She also attests that Crumbl Cookies regularly checked its payroll practices to ensure legal compliance. (*Id.* ¶ 12). In Laken's affidavit, she denies Guenther's recollection of the conversation he had with her and her father Lance. (ECF 43, ¶¶ 6–8). Laken says she once asked Guenther if he planned to work forty hours per week because that was her expectation for him as an employee. (*Id.* ¶ 9). But she denies ever telling him he would not be paid for overtime or encouraging him to work for free. (*Id.* ¶ 6–8).

## **LEGAL STANDARD**

Summary judgment is appropriate if a moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). The Court does not supersede the jury's role in making credibility determinations and weighing the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**DISCUSSION**

Guenther moves for partial summary judgment. For his unpaid overtime claim, he only seeks summary judgment on liability and wishes to reserve the issue of damages for trial. But he argues that he is entitled to summary judgment on both liability and damages on his overtime miscalculation claim. Defendants move for summary judgment on all issues. The Court will address each issue in turn.

### I.     Unpaid Overtime

The FLSA requires covered employers to pay non-exempt employees at least one-and-a-half times their regular rate for any hours worked beyond forty per week. 29 U.S.C. § 207(a)(1).[10] Employees bear "the burden of proving that [they] performed work for which [they were] not properly compensated." *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016). Once employees establish liability by showing they performed uncompensated overtime work, they also must establish damages. *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1256 (7th Cir. 2025). If an employer keeps accurate time records, then the employee "can simply point to [their] employer's records to show the extent of [their] unpaid overtime." *Id.* But "when those records are inaccurate," then "a relaxed burden of proof applies" where the employee need only produce "sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference." *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251–62).

The obligation to pay overtime holds true even when employers "issue formal written policies limiting overtime that are widely violated" or "deliberately close their eyes to overtime work their employees are doing." *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017). So,

---

[10] Crumbl Cookies admits to being a covered employer. (ECF 33, at 3).

employers must "pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work." *Id.* But the FLSA "stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011).

The employer's knowledge can be "actual or constructive." *Id.* In assessing whether an employer has actual knowledge, a supervisor's knowledge is imputed to the employer. *Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) (citing *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1083 (11th Cir. 1994)). An employer has constructive knowledge "if it should have acquired knowledge of that work through reasonable diligence." *Allen*, 865 F.3d at 938. Diligence can be shown by "establishing a reasonable process for an employee to report uncompensated work time." *Id.* But such a process "will not protect the employer if the employer" subtly or overtly "prevents or discourages accurate reporting in practice." *Id.* at 939.

## A. <u>Hours Worked</u>

The record, extensive as it may be, does not definitively show how many hours Guenther truly worked. Defendants argue that the time records answer this question. Guenther was not only responsible for clocking himself in and out, but his wife Alisa—his direct supervisor—recorded most of his time. Those records indicate Guenther worked right around forty hours per week on average, much less than he alleges in this litigation. Sometimes he worked more and got paid for his overtime. Other times he worked slightly less. In Defendants' view, these records are the best indication of the hours Guenther worked and he offers no reliable evidence to contradict them, so summary judgment must be granted in its favor.

The time records are the most tangible evidence of Guenther's work hours. He could clock himself in and out. The system would not let him clock in outside the hours he was normally scheduled for, which was a problem given his irregular hours. But his wife Alisa could—and usually did—log his hours for him, so this was no hinderance. Thus, Guenther had no *literal* barrier to logging overtime hours. This is also the only contemporaneous evidence that documents Guenther's work schedule week-to-week aside from circumstantial text messages, anecdotes, or eyewitness accounts that merely suggest a heightened workload. Given the unique strength of this evidence relative to the rest of the record, the Court cannot grant summary judgment in Guenther's favor. To do so when viewing the facts in the light most favorable to Defendants would require this Court to make credibility determinations it is not supposed to make at this stage.

But Defendants cannot prevail either. While the time records may be the best evidence available, it too has problems. Alisa often logged Guenther's hours post-hoc and pieced it together based on memory. Her deposition testimony suggests that at times this necessarily resulted in inaccuracies. (ECF 34, at 12:3–20). And the records themselves reek of the implication that Alisa often logged Guenther as working random sets of roughly forty hours.

Consider the week of September 19-25, 2022. The time logs reflect that Guenther worked exactly forty hours that week. Which hours, you may ask? Five eight-hour days? Maybe four ten-hour days? No. The records logged Guenther working 19 hours on Tuesday, September 20th, 21 hours on Wednesday, September 21st, and no hours on any other day of that week. (ECF 38, at 81). Alisa manually entered these hours after the fact on September 27th. (*Id.* at 82–83). The week of December 5–11, 2022, sings a similar tune. Those records show Guenther worked 23 hours on December 5th, 10 hours on December 6th, and 7 hours on December 7th, but did not work at all any of the next four days. Up to a certain point, seemingly natural week-to-week variations can enhance

the credibility of records like these. But outliers this extraordinary seriously undercut the records' veracity. The issue is compounded by the records showing Guenther was sometimes logged as working simultaneous hours at multiple stores. (ECF 41, at 60–62).

Defendants also argue Guenther's claim is undercut by the fact that he was paid for all the overtime he recorded aside from 0.17 hours that was discovered in a subsequent review. This can affect the credibility of Guenther's assertions but does not foreclose his claim. *See Magpayo v. Advoc. Health & Hosps. Corp.*, No. 16-CV-01176, 2018 WL 950093, at *5 (N.D. Ill. Feb. 20, 2018) (denying an employer summary judgment even though the employee had to record her own overtime and she was paid for the overtime she recorded). And aside from the first two pay periods around the Mishawaka store opening, Guenther only ever recorded between 0.32 and 4.25 hours of overtime in any one week, a far cry from what he alleges. (ECF 38).

Further, none of the cases Defendants cite can legally get this case across the summary judgment finish line. Defendants point to two cases, *Melton v. Tippecanoe Cnty.* and *Osborn v. JAB Mgmt. Servs., Inc.*, to argue summary judgment is appropriate here.[11] Each is distinguishable.

Defendants argue that *Melton* forecloses Guenther's claim because it paid him based on the time he entered, and the time records flatly refute his claims. The claims about both *Melton* and the records sweep too broadly. In *Melton*, the plaintiff lost at summary judgment on his claims that he worked unpaid overtime because he worked through lunch and had to arrive at work early. 838 F.3d at 816. The plaintiff had alleged that his employer told him he would not be paid for more than 37.5 hours per week, and that his timecards were reduced to that number whenever he

---

[11] Defendants also reference *Buckley v. S.W.O.R.N. Protection, LLC*, No. 1:20-CV-357-HAB, 2022 WL 4598577 (N.D. Ind. Sept. 30, 2022), in its motion to highlight things Guenther should have to support his claim but does not. But in that case, the Court granted *the plaintiff's* motion for summary judgment. *Id.* at *8. It is not a useful measuring stick for deciding whether *defendants* should prevail on summary judgment.

tried to enter more than that. *Id.* at 817. The only evidence he offered to support these claims at summary judgment was a spreadsheet estimate of his unpaid hours and his own deposition testimony. *Id.* His deposition testimony and spreadsheet provided evidence that he was told several times that he had to get to work early. *Id.* But nothing in the record substantiated his claims about working through lunch. *Id.* No days on his spreadsheet accounted for taking any portion of a lunch break, and many of his allegedly uncompensated hours were in fact compensated according to his pay records. *Id.* at 819–20. Contrary to his claims, he was also regularly paid for more than 37.5 hours of work. *Id.* at 820. And even though the plaintiff did offer evidence that he performed unpaid work by having to show up early, that would not have resulted in a FLSA violation because he still would have worked less than 40 hours per week if that unpaid work was counted. *Id.* at 820–21.

While Guenther (or Alisa) recorded his hours like the plaintiff in *Melton*, and both offered questionable spreadsheets in support of their uncompensated overtime, that is where the comparisons end. The time records here suffer from reliability problems that the records in *Melton* did not. Even though Guenther had to enter his own time, those records have problems that have already been well-explained. They were often entered by Alisa, pieced together after-the-fact, and contained many inconsistencies. In fact, taking them at face value requires the acceptance of literal impossibilities.[12] Crediting the time records here like the Seventh Circuit did in *Melton* would allow Defendants to have it both ways—claiming the records are accurate to show Guenther was paid for all his overtime while highlighting flaws in those same records to attack his credibility. Further, if Guenther's claims and estimates are true (or even true to some degree), then he properly

---

[12] *See, e.g.*, ECF 41, at 60–62 (showing Guenther acknowledging multiple occasions where he was logged as having worked simultaneous shifts at different stores).

12

alleged a FLSA violation because he would have worked uncompensated hours that exceeded forty per week.

Defendants respond that Guenther's estimate of his own hours is even more unreliable, and thus too vague or conclusory to establish FLSA liability. They point to *Osborn* to support this conclusion. There, the Seventh Circuit held that the plaintiff had not "carried her initial burden of showing she worked unpaid overtime at all." *Osborn*, 126 F.4th at 1260.[13] The evidence of her schedule "lack[ed] specificity and suffer[ed] from inconsistencies" to such an extent that a jury would be "left to speculate as to how many hours she worked per week." *Id.* While the plaintiff did not need to "rebuild her schedule with precision," the plaintiff's vague recollections being all the court had to work with doomed her claim. *Id.* To deny summary judgment would have meant that "any FLSA claim in which the employee vaguely described [their] schedule as having exceeded forty hours per week would reach a jury." *Id.*

*Osborn* proves to be a poor analogue because Guenther has offered significantly more evidence than the plaintiff there did. Sure, his estimate cannot possibly be *completely* accurate. But he offers at least *some* specific details of hours that the parties agree on: he liked to work early before customers came in, and those hours are not always reflected in the time records.

He has also offered sworn affidavits from *fourteen* employees of the different stores. They all attest to Guenther being a constant or near-constant presence at all three of the stores during their respective shifts. Defendants contend these testimonies should be discounted because many came from part-time employees. But some affidavits were from full-time employees. Other

---

[13] This was exacerbated by her failure to comply with the local rules, which led to her summary judgment responses being stricken and the employer's statement of material facts all being considered admitted. *Id.* at 1254–55. The district judge did still consider additional material facts offered by the plaintiff if the evidentiary record supported them. *Id.* at 1255.

employees, while part-time, still worked between twenty and thirty hours per week. Beyond these affidavits, Guenther has his own testimony and as well as Alisa's. Being his wife, Alisa's credibility can reasonably be questioned.[14] But as his supervisor, she also is the person most capable of attesting to his workload aside from Guenther himself.

Will this be enough to convince a jury? Maybe. Maybe not. But it is enough that a jury could reasonably find that Guenther worked unpaid overtime. The problems with Guenther's estimate of his hours are real. They are ripe for attack at trial for contesting both liability and damages. Still, they are not severe enough to preclude a jury from finding Defendants liable for violating the FLSA.

### B. **Damages**

Defendants also insist that even if Guenther could prove FLSA violations, he cannot prove entitlement to damages. Of course, after proving liability, Guenther "also must establish damages." *Osborn*, 126 F.4th 1250 at 1256. Defendants contend that the time records authoritatively demonstrate the hours he worked. But if that were true, then the Court would have granted Defendants summary judgment on liability. If the records alone cannot foreclose liability, then they cannot foreclose damages either.

Because the time records may be inaccurate, "a relaxed burden of proof applies" and Guenther only needs to provide "sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." *Id.* Even "testimony based on memory" can be enough to survive summary judgment. *Buckley v. S.W.O.R.N. Protection, LLC*, No. 1:20-CV-357-

---

[14] This raises the issue of whether Alisa's knowledge as Guenther's supervisor can be imputed to Defendants. This is addressed in a later subsection of this opinion. Plus, concerns about her credibility cut both ways. Alisa benefits *now* from saying that her husband worked more hours for Crumbl Cookies than his timesheets reflected. It would also mean she was intentionally depriving her household of rightfully earned income for almost a full year. Parsing out motives, past or present, is a job best served by a jury, not this Court on summary judgment.

HAB, 2022 WL 4598577, at *6 (N.D. Ind. Sept. 30, 2022). Crumbl Cookies argues that even under this relaxed standard, Guenther cannot meet this burden. The Court disagrees.

The issues with Guenther's off-the-top-of-his-head estimate are numerous. If that and his own word were all Guenther had to support his claim, Defendants may well have a point. An evidentiary basis that thin would be comparable to that of the losing plaintiff in *Osborn*. But Guenther has provided more. He has Alisa's testimony. He has more than a dozen affidavits from co-workers attesting to facts that raise a rational inference that Guenther may have often worked more than forty hours per week. He may not have worked 100 hours per week as often as he said. Some of his estimate could easily be disproved with other evidence in the record. But given the relaxed burden, Guenther has offered enough evidence that a jury could reasonably believe he regularly worked some amount more than forty hours per week.

Defendants' motion for summary judgment on the issue of damages is denied.

### C. **<u>Defendants' Knowledge</u>**

Still, none of these disputes matter if Guenther cannot demonstrate that Defendants had actual or constructive knowledge of his uncompensated overtime hours. Generally, the knowledge of a supervisor is imputed to the company. Even with the potential credibility issues the Court has outlined, Alisa's testimony supports Guenther's claim. This creates an unorthodox situation. Defendants correctly flag that Alisa stands to benefit by supporting her husband's claims here. They still assert that Alisa recorded Guenther's time accurately. But in their view, if she did not, crediting her testimony would mean she profits from her own malfeasance, so her conduct cannot fairly be imputed to them. Defendants are essentially asking the Court to carve out a "spousal supervisor exception" to the general rule of imputing knowledge. The Court will not.

The legal principles Defendants cite in support of such an exception come from very different areas of law that do not cleanly apply here. They point to a federal case from a different district discussing Illinois common law of agency and an Indiana Court of Appeals case about fraud claims. *Cement-Lock v. Gas Technology Inst.*, 618 F. Supp. 2d 856, 891 (N.D. Ill. 2009); *Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008). Agency law and fraud principles cannot be cleanly transfixed onto this employment scenario. FLSA regulations emphasize that "[t]he mere promulgation of a rule against [overtime] work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13. Defendants still hired Alisa as a supervisor and gave her authority. Her potential failure to stop her husband from working more than forty hours per week, or her efforts to aid and abet him in doing so, is still Defendants' problem.

Material factual disputes would also still exist over Defendants' knowledge even if Alisa's alleged knowledge could not be imputed up the chain. Guenther alleges that Laken and Lance both pressured him to volunteer his time once he had worked forty hours in a week. He also provides deposition testimony and exhibits that could show Erin's knowledge of his overtime work. Both the Carsons and Erin deny Guenther's portrayals of events. But the Court cannot definitively label either story implausible at this stage, so it must go to a jury.

## II.    Miscalculation of Overtime Pay

Guenther contends he is entitled to summary judgment on both liability and damages for his claim that Defendants miscalculated the overtime he was paid for. The FLSA requires that employers pay their employees one-and-a-half times their regular rate for any hours worked beyond forty per week. 29 U.S.C. § 207(a)(1). The "regular rate" does not include discretionary bonuses. 29 C.F.R. § 778.208. Bonuses are discretionary as when the employer "retain[s]

discretion both as to the fact of payment and as to the amount." 29 C.F.R. § 778.211(b). But if "the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it." *Id.* Thus, such nondiscretionary bonuses are included in an employee's regular rate. *Id.*; *see also* 29 C.F.R. § 778.208; *Dokey v. Spancrete, Inc.*, No. 19-CV-921-JPS-JPS, 2021 WL 535435, at *1 (E.D. Wis. Feb. 12, 2021).

### A.  <u>Liability</u>

In the paychecks at issue here, spanning July 8, 2022, to December 23, 2022, Guenther's base pay was $10 per hour. He also made an additional guaranteed minimum of $3 per hour for customer tips. All parties agree that this extra $3 per hour was guaranteed and paid to all employees for all hours they worked, no matter how many tips came in. Thus, Defendants had no discretion over this additional $3 per hour. It should have been included in his regular rate for calculating overtime, bringing his overtime hourly rate to $19.50 per hour. But it was not. Guenther, who at the time was paid by Mishawaka Cookies, LLC, made only $15 per hour for overtime. He was underpaid for these hours, in violation of the FLSA.

Defendants argue that they cannot be held liable because it relied on an administrative ruling from the Department of Labor ("DOL"). The FLSA specifies that an employer shall not be liable for a minimum wage or overtime FLSA violation if it "pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation" of "the Administrator of the Wage and Hour Division of the Department of Labor." 29 U.S.C. § 259(a),(b)(1). The DOL audited Mishawaka Cookies, LLC, in early 2023, reviewing records from pay periods between July 2022 and February 2023. (ECF 36). The DOL investigator issued a "Summary of Unpaid Wages" on March 31, 2023, which found that only one employee was underpaid, and it was not

Guenther. (*Id.*). Defendants contend that if this does not factually disprove liability, then their good faith reliance on the DOL's summary precludes this Court from holding them liable.[15]

Defendants are wrong for two reasons. First, the DOL issued the summary *after* Guenther worked the pay periods at issue. The good faith reliance defense under Section 259 relates to "[r]eliance in [the] *future* on administrative rulings." 29 U.S.C. § 259. One cannot rely on something that does not yet exist. So Defendants cannot have relied on the DOL's Summary of Unpaid Wages when they miscalculated Guenther's overtime pay if they did not yet have the summary to rely on.

Second, the Summary of Unpaid Wages does not suffice to invoke the good faith reliance defense. The Section 259 defense applies only when an employer relies on a "written administrative regulation, order, ruling, approval, or interpretation" of "the Administrator of the Wage and Hour Division of the Department of Labor." 29 U.S.C. § 259(a),(b)(1). A single written finding by a DOL investigator like this one does not fit within that definition. Courts across the country have likewise held that a Summary of Unpaid Wages "does not constitute a written administrative interpretation" envisioned by the statute. *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216, 1222 (M.D. Fla. 2005); *see also Dean v. 1715 Northside Drive, Inc.*, 224 F. Supp. 3d 1302, 1312–13 (N.D. Ga. 2016); *McLaughlin v. Quan*, 1988 WL 62595, at *8 (D. Colo. June 17, 1988); *Murphy v. Miller Brewing Co.*, 307 F. Supp. 829, 838 (E.D. Wis. 1969). The Court agrees with the consensus. Thus, Section 259 cannot shield them from liability or base damages for this FLSA violation.

---

[15] Defendants also note that the DOL interviewed Guenther, who mentioned nothing about what he complains of in this lawsuit. This can undermine his credibility on his unpaid overtime claim, but bears no weight on whether Crumbl Cookies properly calculated the overtime he was paid for.

Mishawaka Cookies, LLC, the defendant who paid Guenther the miscalculated overtime wages, shall pay base damages, reasonable attorney's fees, and costs. 29 U.S.C. § 216(b).

### B. Base Damages, Attorney's Fees, and Costs for Miscalculated Overtime

The standard statute of limitations for FLSA claims is two years. 29 U.S.C. § 255(a). Guenther filed his claims on July 15, 2024. (ECF 1). Most of the days he received miscalculated overtime pay occurred on or after that date, so he will receive base damages for those pay periods. Mishawaka Cookies, LLC, paid Guenther $531.05 for 35.403 hours of overtime between July 15, 2022, and December 23, 2022. Guenther should have been paid $690.36 for these hours. Thus, he is entitled to the $159.31 difference.

Guenther is also entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b). But the Court has denied summary judgment on most aspects of this case, so much litigation is still likely to follow. Plus, Guenther has not requested a specific amount in fees and the parties have not yet briefed out the issue. Accordingly, the Court will not rule on the amount of attorney's fees and costs until the litigation concludes. At that point, the Court will order briefing.

### C. Statute of Limitations and Willfulness

The statute of limitations can extend to three years if the plaintiff can show the employer's violations were willful. 29 U.S.C. § 255(a). The standard for willfulness under the FLSA is "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "The plaintiff bears the burden of establishing willfulness," and "[w]hether an employer acted willfully is generally a question for the finder of fact." *Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784, 798 (N.D. Ind. 2020).

19

Guenther's first payday—when he received the most overtime payment—was July 8, 2022. This falls outside the standard two-year statute of limitations. So although Mishawaka Cookies, LLC, underpaid Guenther on that day by $231.15 for another 51.367 hours of overtime, Guenther would have to prove willfulness to get that amount.

Guenther bears the burden of proving willfulness on the miscalculated overtime claim. The question of willfulness typically goes to a jury, and Guenther points to no evidence that would make it appropriate for the Court to find this violation willful on summary judgment. But a reasonable jury could find that Defendants knowingly violated the FLSA or recklessly disregarded it when his overtime pay was miscalculated.

The Court denies the cross motions for summary judgment on the miscalculated overtime claim for pay periods before July 15, 2022. Guenther can recover damages for the miscalculated overtime he was paid on July 8, 2022, if a jury finds Defendants' violation was willful.

### D. Liquidated Damages for Miscalculated Overtime

Prevailing plaintiffs in FLSA cases are also generally entitled to liquidated damages on top of base damages, attorney's fees, and costs. 29 U.S.C. § 216(b). But Defendants argue that the Court cannot yet grant summary judgment on these because it has a good faith reliance defense. This defense to liquidated damages—found in 29 U.S.C. § 260— is similar to, but distinct from, the good faith reliance defense to liability under Section 259.[16] Under Section 260, the Court "may, in its sound discretion, award no liquidated damages" if the employer can satisfy the Court that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.

---

[16] Defendants did not cite Section 260 in its briefs when making this argument. But the two sections use different language, and Defendants used the Section 260 language in one of its briefs to contest liquidated damages. (ECF 33, at 9).

Defendants contend that they relied on their accountant and the DOL letter to conclude that their pay scheme was legally valid. Defendants also provided a signed statement from their accountant asserting that this payroll practice has been applied uniformly and subject to regulatory audits. (ECF 37).

The Court cannot yet say whether these are enough to relieve Defendants from having to pay liquidated damages. Much of this lawsuit could go before a jury. Evidence would be put to the test and the parties' credibility would be assessed. Because the Court believes it would need to see how such a trial plays out before it can determine whether this defense fairly applies, the Court will reject it for now. Should this case proceed to the point of calculating liquidated damages after a trial, Defendants would be free to make this argument again. Guenther would also be free to argue that this defense should not apply.

### CONCLUSION

Defendants' Motion for Summary Judgment (ECF 23) is DENIED. Guenther's Motion for Partial Summary Judgment (ECF 26) is GRANTED IN PART as to the miscalculation of overtime wages on and after July 15, 2022, and DENIED IN PART as to all other matters. Defendant Mishawaka Cookies, LLC, is liable to Guenther for $159.31 in base damages,[17] plus reasonable attorney's fees and costs. The Court will order briefing on attorney's fees and costs when the litigation concludes.

**SO ORDERED** on March 19, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[17] If Mishawaka Cookies, LLC, has not yet paid for the 0.17 hours of overtime it mistakenly paid Guenther at the regular rate, then an additional $1.62 must be added to account for the pay differential. That would bring the total to $160.93.